An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-348

Filed: 20 October 2015

Ashe County, Nos. 14 JA 6–9

IN THE MATTER OF: T.W.B., S.J.B., T.J.B., and S.J.

Appeal by respondent-parents from Orders filed 30 October 2014 and 13 January 2015 by Judge Jeanie Houston in Ashe County District Court. Heard in the Court of Appeals 5 October 2015.

> *Grier J. Hurley for petitioner-appellee Ashe County Department of Social Services.*
>
> *Assistant Appellate Defender Annick Lenoir-Peek for respondent-appellant mother.*
>
> *Michael E. Casterline for respondent-appellant father.*
>
> *EVERETT GASKINS HANCOCK LLP, by James M. Hash, for guardian ad litem.*

ELMORE, Judge.

Respondent-parents appeal from adjudication and disposition orders adjudicating their children, T.W.B. (Tommy), S.J.B. (Susan), T.J.B. (Teddy), and S.J.

(Sammy), to be neglected juveniles.[1]  The court also adjudicated Tommy, Susan, and Teddy to be abused juveniles and ceased reunification efforts with both respondents. We find no error.

## I. Background

The Ashe County Department of Social Services (DSS) became involved with respondents and their children after receiving a report on 19 January 2014 of domestic violence in the home, for which respondent-father was arrested. Subsequent investigation by DSS uncovered a history of physical violence between respondents in the presence of their children, and that respondent-father physically and sexually abused Tommy, Susan, and Teddy.  While in jail awaiting trial, respondent-father contacted respondent-mother and told her to have the children recant their accusations.  Respondent-mother attempted to get the children to change their stories and allowed respondent-father to talk to the children in an effort to have them recant.  Respondent-mother was subsequently arrested and charged with intimidating a witness and obstruction of justice.  After allegations surfaced that respondent-mother was involved in the sexual abuse of the children, she was also charged with child abuse and committing a sexual offense with a child.

On 31 January 2014, DSS filed petitions alleging all four children were neglected and abused juveniles and obtained non-secure custody of the children.

---

[1] Respondent-father is the stepfather of Tommy, Susan, and Teddy, and the biological father of Sammy.

After a hearing on 26 September 2014, the trial court entered an adjudication order in which it concluded that all four children were neglected juveniles and that Tommy, Susan, and Teddy were abused juveniles. The court continued the matter and held a dispositional hearing on 17 December 2014. In its subsequent disposition order, filed 13 January 2015, the trial court continued custody of the children with DSS and ceased further efforts toward reunification of the children with respondents. The court further found that both respondents had been incarcerated for several months and should not be permitted visitation with the children. Respondents appeal.

## II. Analysis

A. Respondent-Father's Appeal

Respondent-father's sole argument on appeal is that the trial court erred in concluding that Tommy, Susan, and Teddy were abused juveniles under N.C. Gen. Stat. § 7B-101(1)(d). Specifically, respondent-father maintains that the court failed to find sufficient ultimate facts to establish that he committed, permitted, or encouraged the commission of one of the twenty different sexual offenses listed in section 7B-101(1)(d). Respondent-father concedes that the trial court's findings of fact would support "charges" for some of the offenses listed in section 7B-101(1)(d), but argues that without an ultimate finding of fact as to which of the offenses he committed, this Court cannot determine whether the trial court's findings support its conclusion of abuse. We disagree.

An "abused juvenile" is defined to include

> [a]ny juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:
> . . . .
>
> d. Commits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: first-degree rape, as provided in G.S. 14-27.2; rape of a child by an adult offender, as provided in G.S. 14-27.2A; second degree rape as provided in G.S. 14-27.3; first-degree sexual offense, as provided in G.S. 14-27.4; sexual offense with a child by an adult offender, as provided in G.S. 14-27.4A; second degree sexual offense, as provided in G.S. 14-27.5; sexual act by a custodian, as provided in G.S. 14-27.7; unlawful sale, surrender, or purchase of a minor, as provided in G.S. 14-43.14; crime against nature, as provided in G.S. 14-177; incest, as provided in G.S. 14-178; preparation of obscene photographs, slides, or motion pictures of the juvenile, as provided in G.S. 14-190.5; employing or permitting the juvenile to assist in a violation of the obscenity laws as provided in G.S. 14-190.6; dissemination of obscene material to the juvenile as provided in G.S. 14-190.7 and G.S. 14-190.8; displaying or disseminating material harmful to the juvenile as provided in G.S. 14-190.14 and G.S. 14-190.15; first and second degree sexual exploitation of the juvenile as provided in G.S. 14-190.16 and G.S. 14-190.17; promoting the prostitution of the juvenile as provided in G.S. 14-205.3(b); and taking indecent liberties with the juvenile, as provided in G.S. 14-202.1;
> . . . .

N.C. Gen. Stat. § 7B-101(1)(d) (2013). Contrary to respondent-father's argument, this Court is capable of determining whether his acts, as found by the trial court, constitute sexual abuse on Tommy, Susan, and Teddy as defined by section 7B-101(d)(1). Moreover, our Supreme Court has held that a trial court's findings of fact

in juvenile orders need only "embrace the substance" of the statutory provisions at issue, and that the court need not make ultimate findings of fact that align with the specific language used in the statute. *In re L.M.T.*, 367 N.C. 165, 169, 752 S.E.2d 453, 456 (2013).

Here, the trial court's findings of fact detail numerous instances of sexual abuse of the three children that, as respondent-father does not contest, constitute violations of offenses listed in section 7B-101(1)(d). Respondent-father does not challenge any of the court's findings of fact, and they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Accordingly, we hold the trial court's failure to specifically state which offenses listed in section 7B-101(1)(d) it found were committed by respondent-father in its adjudication of abuse is not reversible error. The court's findings of fact are sufficient to support its conclusion that Tommy, Susan, and Teddy are abused juveniles pursuant to section 7B-101(1)(d).

B. Respondent-Mother's Appeal

Respondent-mother first argues that the trial court erred in ceasing reunification efforts because it failed to make the necessary ultimate findings of fact to support its conclusion. Respondent-mother also argues that the court erred in finding reunification efforts would be futile and inconsistent with the children's health, safety, and need for a safe, permanent home within a reasonable time.

The North Carolina Juvenile Code provides that a trial court

> may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time;
> . . . .

N.C. Gen. Stat § 7B-507(b)(1) (2013). When the court ceases reasonable efforts toward reunification of the juveniles with their parents,

> [its] order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time. The trial court's written findings must address the statute's concerns, but need not quote its exact language.

*In re L.M.T.*, 367 N.C. at 167–68, 752 S.E.2d at 455 (quotation marks omitted). Our review of an order ceasing reunification efforts "is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law." *Id.* at 168, 752 S.E.2d at 455.

In its order, the trial court made the following findings of fact in support of its decision to cease reunification efforts with respondent-mother:

> 9. [Respondent-mother] is currently incarcerated in the Ashe County Jail awaiting trial. She has been in jail since May 2014 and does not expect to have her trial prior to March 2015.

10. Prior to going to jail [respondent-mother] entered a Family Service Case Plan to participate in parenting classes to improve her parenting skills, have a mental health assessment, gain employment and stable housing. [Respondent-mother] made progress on her Case Plan— she participated in parenting classes, had a mental health assessment and began counseling as recommended, obtained employment at Hardees's [sic] restaurant, and was living at the safe home due to threats from [respondent-father's] family.

11. The children have had two visits with [respondent-mother] since January 31, 2014. The children's therapists and Dr. Nancy Joyce who conducted the psychological evaluations of the children recommended there be no visits with [respondent-mother].

12. [Respondent-mother] has written letters, sent guidelines for the children's teachers and drawn pictures for the younger children.

. . . .

17. Reasonable efforts to eliminate the need for placement would clearly be futile and would be inconsistent with the children's health, safety and need for a safe permanent home within a reasonable time. The children will have been in non-secure custody and foster care for 12 months as of January 31, 2015 . . . and [respondent-mother] is not expected to have her trial nor be released from jail until March 2015 at the earliest. The children are in need of a permanent home.

Respondent-mother does not challenge these findings, and they are binding on appeal. *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. Additionally, the trial court considered and incorporated into its order reports prepared by DSS and the children's guardian *ad litem*.

Respondent-mother's argument that the trial court failed to make sufficient ultimate findings of fact regarding reunification efforts with her children ignores our Supreme Court's holding that the trial court's findings need only "embrace the substance" of the statutory provisions. *In re L.M.T.*, 367 N.C. at 169, 752 S.E.2d at 456. Similarly, we cannot agree with respondent-mother that her initial progress on her Family Services Case Plan shows that reunification efforts would not be futile or inconsistent with the children's health, safety, and need for a safe, permanent home within a reasonable time. While respondent-mother initially made some efforts toward fulfilling her Family Services Case Plan, her efforts are overshadowed by her actions that led to her arrest for multiple criminal offenses against her children. Respondent-mother attempted to convince the children to recant their accusations regarding their sexual abuse by respondent-father so that he could be released from jail, causing her to be arrested on charges of intimidating witnesses and obstruction of justice. Further investigation into the sexual abuse of the children revealed evidence that respondent-mother was involved in the abuse. Moreover, the evidence before the trial court established that her next court date regarding her criminal charges was in March 2015, but there is no evidence that her charges would be resolved at that hearing, or that any resolution of the charges would not lead to further time in prison.

The trial court made specific findings concerning respondent-mother's acts against her children, her support for respondent-father to the detriment of her children, and the lack of certainty that her criminal charges would be resolved in the near future. The trial court also incorporated into its order the information from the DSS and guardian *ad litem* reports. The findings of fact make clear that the court considered the evidence before it determined that reunification would be futile or inconsistent with the children's health, safety, and need for a safe, permanent home within a reasonable period of time. We conclude that the trial court's findings of fact in its disposition order support its conclusion that reunification efforts should cease.

Respondent-mother also argues that the trial court abused its discretion in concluding that visits with her were contrary to the children's best interests. The court's unchallenged findings, however, establish that the children's therapists and the doctor who conducted psychological evaluations of the children all recommended that there be no visits with respondent-mother. These recommendations, coupled with respondent-mother's incarceration on charges of intimidating a witness, obstruction of justice, child abuse, and for committing a sexual offense with a child, fully support the court's decision to not permit respondent-mother visitation with the children. We find no abuse of discretion.

### III. Conclusion

The trial court's findings of fact in its adjudication order support its conclusion that Tommy, Susan, and Teddy are abused juveniles.  The trial court's findings of fact in its disposition order also fully support its conclusion to cease reunification efforts with respondent-parents, and we find no abuse of discretion in the court's decision to not permit respondent-parents visitation with the children.  The trial court's adjudication and disposition orders are affirmed.

AFFIRMED.

Judges DILLON and DIETZ concur.

Report per Rule 30(e).